Page 1

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

FULLER FULLER,

Court File No. 19-cv-000886

PLAINTIFF, PLAINTIFF'S MEMORANDUM REGARDING PRE-TRIAL, TRIAL, ADMISSIBLE EVIDENCE REQUESTED BY THE PLAINTIFF, DISMISSED CLAIMS, AND FABRICATED EVIDENCE

v.

STANLEY HAFOKA, et al.,

DEFENDANT,

RECEIVED

MAY 02 2023

CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

## INTRODUCTION

This letter is regarding many pertinent issues that have not been fairly ruled upon by the Court. The Plaintiff was preparing some documents that needed to be submitted to the Court before the Court issued the Trial Scheduling Order on February the 24th of 2023 see Dkt. 226. These documents are extremely important, because they are related to newly discovered evidence of the video footage and objections to claims that were dismissed by the Court. In which, the evidence alone of the video footage proves that multiple claims should have survived summary judgment. The Plaintiff will address many claims that have been dismissed and admissible evidence that was not admitted by the Court which the Plaintiff requested for. The Plaintiff will also address the video footage that has been fabricated by being altered by the Defendants. This memorandum will also address some things the Plaintiff would like to address about the Pre-trial and the trial scheduling order by the Court. The Plaintiff reviewed the Trial Scheduling Order and the Plaintiff would like to have a hearing along with the Defendant about how this trial is supposed to be conducted by the Court and also clearer details on being Pro-Se to prepare for trial.

SCANNED
MAY 03 2023
U.S. DISTRICT COURT MPLS

### The Hardship & Erroneous Rulings Caused by the Court

The Plaintiff must state these facts to you Judge Schiltz that you have caused an intentional hardship that has severely harmed this case. One of the first things I need to explain is that the Court is fully knowledgeable that the Plaintiff is a Pro-Se party in this 1983 claim for Deprivation of Rights. The Plaintiff during the process of this case has been learning how to litigate in defending his legal rights concerning this 1983 claim for Deprivation of Rights as the case has been going on. This brings me to making another very important statement, it is not fair to the Plaintiff to be treated by the Court as if he is an attorney. That has been educated and has knowledge about laws and how to do trials based upon both experience and training which takes several years for a person to learn in a university college. It is also pertinent for the Plaintiff to state that the Court was very prejudiced against the Plaintiff during the Discovery process and the Summary Judgment hearing.

Which was going on during the Pandemic that was world wide at this time and the Minnesota District Court was shut down for operations as well. The Plaintiff attended Augsburg University as a student at this time which was also shut down for business and students were only able to use the library by appointment only. Public libraries and businesses were also shut down for operating hours as well see Dtk. 101. The Court treated this case and the Plaintiff that is Pro-Se with "No leniency" that needed additional time to receive documentation and to submit documents and evidence to the Court relating to briefs and other documents. Relating to the Court scheduling order during the pandemic which affected regular business hours. The Court treated this very large situation as if there was no Pandemic going on at the time, even when the Court itself was closed most of the time.The Plaintiff also submitted some very important documents and exhibits to the Court the day before the Summary Judgment hearing and the Court did not except these documents for the hearing during the Pandemic which closed all facilities, institutions, and even the Court was closed for many days see Dkt. 101, and Dkt. 178.

Furthermore law states that Judges of the Court are knowledgeable, that "All Evidence Is Considered Admissible" in a Court of law see Rule 402. Also the Judge of the Court is supposed to be lenient during a world wide crisis such as the pandemic. All of these things made it very difficult for the Plaintiff to meet the deadlines in the Court scheduling order during Discovery and also during the Summary Judgment. The Plaintiff is requesting in reflection of Rule 402 for the evidence or exhibits the Plaintiff submitted to the Court before the Summary Judgment hearing to be admitted to the Court for trial. The Plaintiff should not have to submit documents a second time that has already been submitted before the Summary Judgment. These documents should have been admitted to the Court at that time.

### The Court Refuses to Uphold the Laws Due to a Prejudice and Erroneous Rulings

All of the things written in this memorandum reflects a judicial misconduct on behalf of the Court and it violates the Plaintiffs right to a "fair trial" and it violates the law in reflection of the 1983 claim for Deprivation of Rights. This also violates the Code of Conduct for United States Judges in reflection of Canon 1: A Judge Should Uphold the Integrity and Independence of the Judiciary. This means there should never be any prejudice from a District Court Judge. Canon 2: A Judge Should Avoid Impropriety and Appearance of Impropriety in all Activities. This means a Judge is never supposed to make erroneous rulings ever. Canon 3: A Judge Should Perform the Duties of the Office Fairly, Impartially, and Diligently. In reflection of Rule 46 Objecting to a Rule or Order the Plaintiff requests for the additional evidence such as the video footage when the Plaintiff was in the segregation unit injured and the personnel documents of the 7 Defendants. The Plaintiff is requesting for the previous evidence to be admitted to the Court in reflection of Rule 401(a), Rule 401(b), Test for Relevant Evidence, Rule 402 General Admissibility for Relevant Evidence, Rule 104(a), Rule 104(b) Preliminary Question, Rule 103 Ruling on Evidence, and Rule 72(a) Nondispositive Matter.

The many requests the Plaintiff made to the Court alone proves the Plaintiff has not been given a fair opportunity to a trial. The Court also dismissed multiple claims that the admissible evidence of the video footage factually proves many of those claims should have survived summary judgment to be tried during trial. These are things that Judges are never supposed to do intentionally. This is a major violation of the Plaintiff's right in reflection of the 1983 claim for Deprivation of Rights and the 14th amend., sec. 1. Because the Plaintiff is not receiving a fair trial this is an injustice on the behalf of the Court and it is a hardship that is severely harming this case. The Court has made "no effort" to serve "justice" by making sure the correct rulings are made so the trial will be fair. It is the Court's duty to make sure that this 1983 claim for Deprivation of Rights is a "Fair Trial".

### The Attorney the Plaintiff had Appeared in this 1983 Claim

### Requested for the Court to Readmit Some Claims that was Dismissed

The Plaintiff had an attorney during the appeal in the Eighth Circuit that filed for a Final Judgment under Rule 54(b) see Dkt. 196. The attorney argued to the District Court that the claim of Hafoka using a choke hold and the claim of Dualeh and Snyder failure to intervene claim should be admitted back to the Court as a final judgment. Even the Eighth Circuit had ruled on Hafoka's appeal for qualified immunity that Hafoka used a choke hold to take the Plaintiff Fuller down to the ground see Fuller v. Hafoka on appeal in the Eighth Circuit Court of Appeals Dkt. 224. The Plaintiff Fuller won on Hafoka's appeal for qualified immunity. The Eighth Circuit ruled on appeal before three Judges, one in which is the Chief Judge of the Eighth Circuit, ruled that Hafoka "in fact" used a choke hold to take Fuller to the ground using excessive force. The District Court ruled during the summary judgment that Hafoka did not use a choke hold to take the Plaintiff Fuller to the ground and dismissed the choke hold claim on Hafoka see Dkt. 176 at p59. The Eighth Circuits ruling means that the District Court must also affirm with the Eighth Circuit's ruling on the Hafoka choke hold claim. Something else very

important which needs to be mentioned about the failure to intervene claim that was dismissed by the Court on Dualeh and Snyder is. The evidence of the video footage factually proves that Dualeh and Snyder were willfully involved in a failure to intervene in Hafoka having the Plaintiff Fuller in a choke hold for over 30 minutes. The fact that this is shown in the video footage a layman person would know that the failure to intervene claim against Dualeh and Snyder should have survived summary judgment in the Court.

Another thing which is very important for the Plaintiff to inform the Court of is that 2 of the claims that the District Court dismissed in the Fuller v. Hafoka case. Are the same as the failure to intervene and denying a medical emergency from 2 of the 3 police officers that were convicted during the George Floyd trial in the Minnesota District Court. Tou Thao was convicted on failure to intervene and denying a serious medical need to George Floyd from a jury trial and he was sentenced to 42 months which is 3 ½ years for each charge which totals 84 months which also totals 7 years. Alexander Kueng was also convicted on both charges of failure to intervene and denying a serious medical need also to George Floyd and he was sentenced on a downward departure because he was a rookie police officer and he only received 36 months which is also 3 years. All 3 of the police officers were sentenced in the Minnesota District Court including Thomas Lane that took a plea bargain and was sentenced to 30 months which is 2 ½ years for Failure to Intervene and denying George Floyd of a serious medical need see Thou Thao (2), J. Alexander Kueng (3), and Thomas Kiernan Lane (4), case No. 21-cr-108 (2-4) (PAM/TNL. The convictions of the ex-police officers Tou Thao and Alexander Kueng are the same claims that the Minnesota District Court dismissed in the Fuller v. Hafoka case. The claims that the District Court dismissed in this case is Failure to Intervene by Ahmed Dualeh and Janet Snyder and Medical Emergency not given from Robert Erickson and Steven Routhe that immediately came to the seen, the same as the ex-police officers did in the George Floyd case see Dkt. 176.

The only difference is 2 Sargeants forced the Plaintiff Fuller to walk on a broken ankle all the way to the segregation unit to an entirely different floor in the ADC which is shown in the video footage. This very serious violation of the Plaintiff's right to a medical emergency is seen so clearly in the video footage that even a layman would have known that there was a medical emergency that needed to be tended to, right away, at that moment. There was a claim filed for Deprivation of a Right relating to injuries and a medical need the Court dismissed. This is one of the biggest prejudices by the Court against the Plaintiff which clearly shows an eronneous ruling. Because it is so obvious what the video footage depicts the Defendants did to violate the Plaintiff's constitutional rights of the 8th Amend., and the 14th Amend., of the U.S.C. The Court excluded the facts of the admissible evidence of the video footage, and dismissed claims that were proven through the facts of the evidence which should have survived summary Judgment. The claims should still be alive to be tried during trial; this is clearly a judicial misconduct by the Court. There also does not need to be evidence proving that the Sargeants making the Plaintiff walk on a broken ankle all the way to a segregation unit on a different floor caused further injuries to the Plaintiff. That is logical, that is "Common Knowledge" not only would a layman know this, anybody would know this, because it is just, plain "Common Knowledge".

The Plaintiff is requesting in reflection of Rule 46 Objecting to a Rule Or Order regarding these claims being readmitted to the Court to be tried by a jury. The Choke Hold claim against the Defendant Stanley Hafoka, the Failure to Intervene claim against Ahmed Dauleh and Janet Synder these are 2 separate claims, the Jail Medical Negligence claim against Robert Erickson and Steven Routhe these are 2 separate claims, and the lost, damages, and injury claim against the 7 Defendants this is 1 claim, Failure to Train by Steven Routhe and Robert Erickson these are 2 claims, and jail misconduct by Robert Erickson and Steven Routhe these are 2 claims, and a conspiracy to excessive force claim against Stanley Hafoka, Taylor Kuseske, Ahmed Dualeh, and Janet Synder these are 4 claims, and also Denial to Investigate and to conduct an

After Action Review for the lower Court by Robert Erickson and Steven Routhe these are also 2 claims. The Plaintiff is requesting for a Hearing Motion in reflection of Rule 78 to address the Court of these claims that were dismissed that the evidence proves should not have been dismissed.

The Court stated "A single deviation from a written, official policy does not prove a conflicting custom or usage." The Plaintiff not only used one of the ADC policies he used a few. These are all things based on the policies of the Ramsey County Adult Detention Center correctional officers are trained to do. Force is not to be used around the neck or head and verbal demands and de-escalation are absolutely supposed to be used before any use of force see Ramsey County's policy Dkt. 1-1 page 18, see also Plaintiff's Memorandum in support of Summary Judgment Dkt. 151, p. 5 Judge Schiltz you know this. More importantly, the April 14th incident is all that is needed based upon the evidence of the video footage, Ramsey County Adult Detention Centers policies, and the laws the Plaintiff used associated with this 1983 claim, including the 18 violations the Plaintiff filed with this lawsuit is all that was needed, including the evidence the Plaintiff requested which the Court did not allow for a trial. The Court also dismissed a claim that the Eighth Circuit affirmed was a choke hold that Hafoka used on the Plaintiff. All of the claims that should not have been dismissed are so obvious in the video footage that even a layman would know that the claims the Court dismissed should still be alive to be tried during a trial.

The Plaintiff will explain the part of the video footage that was relating to the excessive force claim regarding the concussion caused by Hafoka which was newly discovered after the Summary Judgement ruling and during the time of the appeal in the Eighth Circuit Court. Hafoka is using the choke hold he used to slam Fuller to the ground to slam his head on the concrete causing a concussion to the Plaintiff's head. This can be seen starting at 8:15:44.967 But the facts of the newly discovered evidence will factually prove that the ADC employees

fabricated the evidence by altering the video footage and fabricated lies in the medical documents.

This is exactly why the Plaintiff asked the Court for the video footage of the Plaintiff when he was in the segregation unit injured. The video footage the Plaintiff requested from the Court before the Summary Judgment hearing should prove the accusations the Plaintiff claims. When the Court asked the Defendant's attorney during the Summary Judgment hearing "Can you get the video footage"? The Court was supposed to have made the Defendants submit the evidence of the video footage to the Court for the Summary Judgment ruling. This video footage should prove the accusations the Plaintiff is claiming relating to this 1983 claim unless the ADC fabricates this video footage as well by altering it. It is also important to state that the ADC policy states that they must hold and store away use of force video footage for up to 7 years.

Another very important thing the Plaintiff needs to bring to the Court's attention is about some newly discovered evidence in the video footage which is so obvious that the video footage has been fabricated a "layman person would know" without a reasonable doubt that the Defendant's fabricated the evidence by altering the video footage.

### Newly Discovered Evidence In the Video Footage

Here is some significantly new evidence that was discovered during the appeal in the video footage which proves factually without a reasonable doubt that the video footage has been altered from the original version by the Defendants. The Court must carefully consider reviewing to test the relevance of the evidence of the video footage in reflection of Rule 401(a), and Rule 401(b), and Rule 104(b). Which shows in the video footage at 8:15:23.323 AM where the Defendants stated the Plaintiff turned 180 degrees (or more) toward Hafoka according to the Courts order on summary judgment Dkt. 176 at p. 12 (2), in which this is how the Defendants interpreted what happened.

The part in the section of the video footage that needs to be closely reviewed in camera by the Court is the wristband on the right side of what is supposed to be the Plaintiff's wrist or the beginning part of his forearm where the wrist is located, this can be seen in the video footage at 8:15:23.323. Throughout the entire video you can see that the Plaintiff's wrist band can be seen numerous times on his left wrist in the video footage. During certain times of the video footage you can clearly see that the wrist band was on the left side of the Plaintiff's wrist and at certain times on part of his lower forearm, while he was writing the request on the door and when the Plaintiff was walking to the steel table and gathering a hygiene kit, pencil, and paper at the steel table in the hallway of the SHU Unit in 500D. This can be seen in the video footage starting at 8:12:15.349 AM to 8:15:12.337 AM but the wrist bracelet seen on the Plaintiff's left wrist is best seen at these times 8:13:44.386 AM, and then again at 8:13:51.436, and then again at the same time just a little farther away to see image completely 8:13:51.436 see the pictures time stamped below.

Page 10.





Page 11.

The wrist bracelet can be seen on the Plaintiffs left wrist in 3 different sections of the video footage and it is obvious because it is seen as a white wristband and the face is blurred out so nobody can see who this person really is. This can be seen when this person was walking to the cell right before the part where the Plaintiff was shown turned towards the Defendant Hafoka see the images below starting at 8:15:22.323 and again at 8:15:22.523 AM and then once again at 8:15:22.721. However, out of the 6 images shown in this memorandum the most important one is the 7th image at 8:15:23.323, which shows the white wristband on the right forearm seen in the 4th image below.



Page 12.



Page13.





      This is undeniable factual evidence which proves without a reasonable doubt that the video footage is fabricated and was altered by the Defendants. From these images in the video footage even a layman person would know without a reasonable doubt that the video footage has been altered by the Defendants from its original version. In reflection of Rule 46 Objecting To A Rule Or Order, and Rule 401(b) Test Relevant Evidence, and Rule 402 General Admissibility of Relevant Evidence, and Rule 55(2),(C) Establish The Truth Of Any Allegation By Evidence the Plaintiff is objecting to the Courts order on summary judgment Dkt. 176 p.15 paragraph 1. The Plaintiff is also requesting for the Court to establish the truth of any allegations by the Plaintiff and the

Defendants relating to the evidence of the video footage. The Court must test the relevancy of the evidence, at this moment and the Plaintiff also moves the Court to enter a default judgment in reflection of Rule 55(2),(A), and Rule 55(2),(B), and Rule 55(2),(C), and Rule 55(2),(D), and Rule 55(2),(D),(d), Default Judgment for the Plaintiff to win by default. Due to the Defendant tampering with evidence by fabricating the video footage by altering it from the original recorded data. The Defendant's attorney Kimberly Parker also wrote the Plaintiff a letter stating that the Defendants did not have any video footage evidence from the excessive force incident which occurred on April the 14th of 2017. The Defendant's attorney was sure that there was no video footage at all see the letter attached to this memorandum. This also proves that the Defendants were working on fabricating the video footage during this time. The Plaintiff is requesting in reflection of Rule 78 for a motion hearing to address these issues.

The Court stated that the Plaintiff Fuller did not mention picking up a pencil in the Summary Judgment ruling see Dkt. 176, p. 5. The Plaintiff did not mention picking up a pencil in the Summary Judgment hearing. However, the Plaintiff did mention in the f26 report that he picked up a pencil see Dkt. 26, p. 2. In the evidence of the video when the Plaintiff threw the pencil at the door that was in front of him in Unit 500D in the glassed-in hallway at 8:15:23.123. When you look at the video section by section in the very next section the video shows the Plaintiff turned at 160 degrees towards the stairs with arms raised in the air with paper in what appears to be the Plaintiffs right hand at 8:15:23.323. Then in the next section it shows the Plaintiff turning again, throwing paper at the door in front of him at 8:15:23.523. The Court stated that this was done "All in 4

tenths of a second" and that "This is literally impossible; it is simply beyond the capacity of any human being" see Dkt. 176, p. 12. The fact that the video shows the Plaintiff throwing the pencil at the door and then turning around toward Hafoka at 160 degrees and then turning around facing forward again in the amount of time the Defendant is saying the Plaintiff did these things is impossible like the Court stated. So, from this being true and factual the Court also knows that this proves the video footage has been altered. In reflection of Rule 55(2),(A), and Rule 55(2),(B), and Rule 55(2),(C), and Rule 55(2),(D), and Rule 55(2),(D),(d), Default Judgment the Plaintiff is requesting for the Court to enter a Default Judgment against the Defendants for fabricating the evidence of the video footage.

The Plaintiff failed to mention the claims that were added by the Court to this law suit during the pleadings see Dkt. 97. Those claims were infections and swollen lymph nodes from the injuries that were further caused from the excessive force from Hafoka. The Court stated that the Plaintiff abandoned these claims during the Summary Judgment see Dkt. 176, p. 21. The Plaintiff did not intentionally mean to abandon these claims the Plaintiff simply forgot because these claims were added during the pleading and it was not filed with the complaint in the beginning of this suit. However, the Court mentioned that there is no record of the Plaintiff sustaining these injures the Plaintiff do have records of these injures and would like to submit these records to the Court, in reflection of Rule 401(a), and Rule 401(b) Test for Relevant Evidence, and Rule 402 General Admissibility of Relevant Evidence, and RULE 104(a), and (b) Preliminary Question, and RULE 103 Ruling on Evidence. In reflection of the Fed. R. Civ. P. 16 (b),

the Plaintiff is requesting for the pre-trial scheduling order to be modified due to the time spent on the Plaintiff organizing this memorandum, motions, and affidavit to submit to the Court.

The last thing is during the Summary Judgment the Defendants argued that the Plaintiff did not submit a sworn affidavit with his brief for Summary Judgment see Dkt. 176, p.5. The Plaintiff discovered after reviewing the Defendant's Affidavit in support of Summary Judgment that the Defendant's affidavit is not an officially sworn affidavit. Because the Defendant's have not sworn under penalty and perjury that everything written in their memorandum for summary judgment is "True and Factual". The Defendant's Affidavit also was not notarized so technically the Defendant's Affidavit is an unsworn declaration see Dkt. 155. Due to the Defendant's unsworn affidavit in reflection of Schneider v. Chertoff 245 F.R.D 422, 424 (D. Neb. 2007). The Plaintiff is requesting for the Defendant's affidavits to be withdrawn from the record and for the Plaintiff to win this 1983 claim by default due to an unsworn affidavit in reflection of Rule 55(2),(A), and Rule 55(2),(B), and Rule 55(2),(C), and Rule 55(2),(D), and Rule 55(2),(D),(d), Default Judgment.

Date: May 1st, 2023                    By: _____
                                           /Plaintiff/Pro-Se, Fontell Fuller
                                           322 South 2nd Street, Apt. 604
                                           Mpls, MN 55401
                                           Cell Phone: (612) 391-2942
                                           fontell.fuller@alumni.augsburg.edu